Mr. Cole is here for the account. By the way, Mr. Sam Coney, Support Bank, I think you saw him. And Mr. Phillips is here for the Department of Justice. I see him, I think. We can see ourselves. I can see actually me and him. I see him, yes. Do you want me to, is there a technical difficulty that y'all need to fix? I may have pleased the court. My name is David Stoler. I'm a private immigration attorney from Orlando, and I represent Elvis Morfa Diaz. So this case presents a question much similar to I think the first case that was argued today, regarding whether or not a conviction under New York penal law back in 1996 qualifies as an aggravated felony under the Immigration and Nationality Act. Now, first step in order to figure that out is to determine whether or not the statute itself is divisible. We've argued that the way that the statute reads, it is indivisible in that it creates multiple means of committing a single offense as designated under New York law. Now, this statute is a little bit different than some of the other New York statutes that talk about controlled substances as a whole. This statute defines nine categories that are further defined under the definitional section in the New York penal law. Can I ask one quick question before you get started on the New York statute? Are you proceeding under the 1996 version? Well, yes. I mean, I think we have to take a look at the statute that was in place at the time that he was convicted. But I must confess that there are some issues that the government raised in its brief that come to how, at the end of the day, we determine whether or not this conviction is an aggravated felony. And the reason is because the outline of our argument is that this is an indivisible statute and that the New York statute is broader in scope than the federal. I'm sorry, that the New York statute is broader in scope than the federal statute. The problem is that the way that we've described everything, I must confess, I think is incorrect. And so the issue is that the statute's indivisible. And whether it's indivisible or it's divisible I don't think really matters because the provision at issue here is whether or not he was convicted of something. It was a narcotic drug. And when you look at the federal schedule and you look at the New York schedule, the New York schedule is actually broader when it comes to a narcotic drug than the federal schedule. And the reason is because in 2015 the DEA apparently took one of these substances that the New York schedule has off of the list, Naloxicol. And I came to that because when reading the government brief, the government argues this case called Townsend from the Second Circuit. And the statute in Townsend that was discussed was a statute that encompasses making it an offense under New York law to be, and I can't remember exactly what it is, but it defines the substance as any controlled substance under New York law. And the government is trying to distinguish the fact that our statute in question here is not as broad as the one in Townsend. But there's another case called U.S. v. Swinton at 495 F. Sup. 3rd 197 out of the Western District of New York from 2020 that actually looks at our specific statute and not only distinguishes Townsend as the government was trying to argue in its brief, but also comes to the conclusion and talks about this whole idea in 2015 that there was something removed off the list, which makes the New York schedule broader than the federal schedule. Let me, again, so I asked the question about 1996. So as I understood it, you in your brief are arguing that the 2020 version of the New York law regulates HCG, but you're not citing to the 1996 version, in effect, at the time of the conviction, which doesn't regulate HCG. Right. And so, again, I think that the brief incorrectly, the brief sets forth the right framework, but does, I'm going to concede, it does a bad job of trying to explain how we got to where we thought we should go. We were arguing that there were things covered under the statute in the brief, at least, that turn out not to, that are actually, the federal schedule and the state schedule actually correspond. And that's what these cases talk about, is that the one is not broader than the other, but the reality is when you look at this Swinton case discussing the specific statute in question here, at least since 2015, it is actually broader because of this one substance that was removed. So the right, then it comes to a question of, do we look at everything from the time of- Delete one substance? That doesn't make any sense to me. Correct. Right. So, in other words, if my client had been convicted of the same exact offense at some point after this one drug was removed off of the list, you can't say it's an aggravated felony because the state schedule is broader than the federal schedule. But it wasn't broader at the time of his conviction. That's correct. And when you take a look at the Second Circuit cases discussing this issue with reference to whether or not somebody is an aggravated felon for purposes of determining whether they're subject to deportation, that you have to take a look at the time of conviction as opposed to there's cases, again, in the Second Circuit, and that's what Swinton is all about. Swinton's a sentencing case, right, and all this- How do you go around the Second Circuit, too, when you talk about aggravated felonies? In the Second Circuit, it's not an aggravated felony. It's not an aggravated felony. In this law, it's categorically an aggravated felony. It's categorically an aggravated felony. It's categorically an aggravated felony. And you have a great deal of evidence in the Second Circuit that says that's not an aggravated felony. Because Pasquale didn't discuss at all this controlled substance argument. It discussed the mens rea of the offense itself. But- Without discussing at all the controlled substance part of it. If you can be convicted of an offense, as Pasquale discussed, in New York for something that's not controlled under the federal schedule, then you can't be convicted of an aggravated felony. This is- Well, I mean- Well, first, it's an unpublished decision. I'm not actually familiar with that case- It holds the same as the Second Circuit. In reference to Pasquale. Right. But the issue is, here, the question is whether the conduct for which somebody can be convicted in New York is conduct that's broader than the conduct that's prescribed by the federal statute. At the time of the offense. And that's where I must concede. At the time of the offense, it doesn't work on it for us. Today, or since 2015, at least. You have to argue today and not the time of the defense. Right. And so when you look at some of these cases that discuss issues of enhancements in criminal rules, federal criminal practice, there's a lot of discussion about, well, what do we apply? Do we apply the time of conviction? Why don't we use the statute at the time of the offense? No, from what I can- Why not? Use the statute at the time of the offense? Right. And I will concede that in the Second Circuit, there's another case called Doe versus Sessions, where they came with this same issue. For purposes of determining whether somebody is subject to deportation, what do you use? The time of the offense or the time today that we're in court? And the answer was the time of conviction. Right. Because there's a different approach when we're dealing with trying to figure out whether somebody is subject to deportation, especially in the context of working out a plea. They want to know, am I going to be subject to deportation if I enter a plea to this offense? And there we clearly in the board, and I think the Second Circuit as well, talks about looking at the time of conviction. But here we have a situation where the gentleman is not subject to deportation. He's never going to be subject to deportation because he already got sent to see an immigration judge, and an immigration judge granted his application for relief from removal, and now he's applying for naturalization. And so there's all these cases out there that talk about the CSA is this kind of moving target. Things come in, things go out, things get invented, and so there's a lot of differences over time about what is and what isn't. For purposes of sentencing, it's clear that you apply the guidelines at the time. You apply the rule as it is today. And I would suggest, although again, I don't think it's briefed properly in the way that we've presented this, that the right answer is that you apply the rule as it stands today, not the rule at the time of conviction. There's a different issue when it comes to one's qualification to become a naturalized citizen of the United States as opposed to whether or not somebody is subject to deportation. And so over time, those rules can change, and clearly the removal in 2015 of this one drug makes the New York provision overbroad. Now, while making this argument, I also concede that this is something that the judge didn't discuss. It's something that's not argued this way in our brief. The government comes close to getting partway there because they rely a lot on Townsend to try and upend the argument that we've presented, and then Townsend brings us to this U.S. v. Swinton case, like I said, talking about the same exact case. Now, Swinton is a sentencing case, so I don't know of anything out there talking about the exact issue that I'm bringing before the court, which is the issue I think that Judge Branch discussed, which is do we apply things at the time of conviction or do we apply things today when the gentleman is applying for naturalization. Suppose we have the exact opposite situation. Suppose the statutes did not match up at the time of conviction, but they do now. You wouldn't be arguing we should look at them now. For purposes of deportation, the answer would be no because then in theory, well, ex post facto is not – it's like an ex post facto issue. You can't – if you were convicted at the time – if they didn't match at the time of conviction, that doesn't make you subject to deportation later on if now they do make the match. But that's not the issue before the court. The issue before the court is this question of whether or not a gentleman who is not going to go and see an immigration judge based on this same offense is eligible to become a naturalized citizen. And so it's clear, I think, that if he was convicted of the same exact offense today, not only would he not be subject to deportation, but he clearly would be eligible to become a naturalized citizen of the United States. So in the situation here, I think it's more akin to the sentencing issue rather than the gentleman understanding what the immigration consequences of his plea are vis-a-vis whether he's subject to deportation. And the right time to look at it is today on the list that we have available in the current schedule of controlled substances. My time is up. Thank you. Good morning, Your Honors. Can you all hear me well? Yes, we can hear you. During the last argument, I wasn't able to – during Mr. Stoller's argument, I was not able to hear Judge Wilson. I heard, Your Honor, during all of the preceding arguments, but I was not able to hear you during Mr. Stoller's argument. I'm sorry. I had my microphone off. Can you hear me now? I can hear you now. Thank you. Good morning. Julian Kurz for Appalese. May it please the Court. I'd like to present three arguments this morning. First, Mr. Diaz was convicted under a divisible statute. Therefore, the modified categorical approach applies for purposes of determining whether his conviction qualifies as an aggravated felony under the Immigration and Actionality Act. Second, the available Shepard documents indicate that Mr. Diaz was convicted under Subdivision I of New York Penal Law, Section 220.39. And third, Mr. Diaz's conviction under Subdivision I qualifies as an aggravated felony because the Controlled Substances Act prohibits the distribution of each substance covered by the state statute and prescribes felony punishment for such distribution. So the framework for determining whether a non-citizen's conviction qualifies as an aggravated felony is set out in Moncrief v. Holder. And under that framework, the first inquiry is whether the state statute is divisible. If the statute lists alternative means of violating the statute as a whole, it is indivisible. On the other hand, if the statute lists alternative elements that must be proved to a jury, then the statute is divisible. And to analyze the divisibility issue, we look at authoritative sources of state law, including indictments, jury instructions, and plea agreements. I'm sorry, and judicial opinions. Here, the indictment charges Mr. Diaz with selling a, quote, narcotic drug. This is a reference to Subdivision I of the statute. The indictment doesn't reference any other subdivision, and that points towards divisibility. Second, the jury instructions that were in effect in 1996, which is the date of Mr. Diaz's conviction, set out distinct charges for each subdivision of Section 220.39. And that, again, is strong evidence of divisibility. Lastly, New York judicial decisions, including the ones that we cite at pages 10 to 11 of our brief, speak of offenses specifically under Section 220.39.1. And those decisions state that such offenses require proof the defendant sold a narcotic drug. So these decisions establish that narcotic drug is an element that needed to be proved to a jury, and therefore that the statute is divisible. Because the statute is divisible, we next ask which part of the statute Mr. Diaz was convicted under. And to answer that question, we look at the Shepard documents, which can include the charging document, the plea agreement, or a comparable judicial record of the information that is typically contained in those documents. Here, the indictment charges Mr. Diaz with knowingly and unlawfully selling a narcotic drug, to wit, cocaine. And this, of course, is a reference to Subdivision I. Additionally, an order denying Mr. Diaz's motion to vacate the judgment states that Mr. Diaz was convicted upon his plea of guilty, and then the court cites Section 220.39.1. And that order, in addition to the indictment, establish that Subdivision I is the provision that we compare to federal law for purposes of the categorical analysis. So the third inquiry is whether a violation of Subdivision I categorically qualifies as an aggravated felony. And to answer that question, we ask two things. First, whether Subdivision I necessarily prescribes conduct that is an offense under the Controlled Substances Act. And second, whether the CSA necessarily prescribes felony punishment for that conduct. The second part of the test is not an issue here, so I'll focus on the first part. And first, I just want to note, in reference to Mr. Stoller's argument, that we look at the state statute as it existed at the time of conviction. In the Chamu case, that's what this court did. It looked at a Florida statute in 2003, which was the year in which the appellant in that case had been convicted. This issue didn't come up in the briefs, but I think it's well established that for purposes of the categorical analysis, you look at the state provision as it existed at the time of conviction. And the Chamu case is one example of a case in which the court did so. So as far as the categorical analysis, we start with the state statute, which, again, prescribes the knowing and unlawful sale of a narcotic drug. And New York defines narcotic drug as any controlled substance listed in Schedule 1B, 1C, 2B, or 2C other than methadone. The corresponding Controlled Substances Act statute is 21 U.S.C. Section 841A1, which provides that it shall be unlawful for any person knowingly or intentionally to distribute a controlled substance. And federal law defines a controlled substance as a drug or other substance included in Schedules 1 through 5. So the question becomes, do the federal schedules cover each drug that is listed in the relevant New York drug schedules? The answer to that question is yes. In the United States v. Sadler case, the Second Circuit said, quote, Every substance that is criminalized by New York Schedules 1B, 1C, 2B, and 2C appears on the federal schedules. Now here, Mr. Diaz has argued that there is a mismatch because the state statute covers human chorionic gonadotropin, which I'll refer to as HCG, whereas the federal statute does not cover HCG. And he's simply wrong in arguing that the state statute covers HCG. Actually, another New York statute, Section 220.31, prohibits the distribution of a controlled substance, which is a broader category that does include HCG. But this statute, 220.39.1, prohibits the distribution only of a narcotic drug, which is a narrower category that does not include HCG. And that that ends the analysis. There is a categorical match between the state statute and the federal statute. For that reason, the court should affirm. Other substances don't matter. Here at the argument, Mr. Stoller raised an issue regarding naloxigel. As I think the court noted, that drug was removed from the federal schedule in 2015. And that substance is not relevant because Mr. Diaz was convicted in 1996 before that drug was removed from the federal schedule. So there is no mismatch based on naloxigel. But aside from that, the court need not even consider other substances. First of all, because Mr. Diaz didn't present any argument in his brief regarding any other substance, he forfeited any such argument. Moreover, he bears the burden of proof pursuant to 8 CFR section 316.2b to establish by a preponderance of the evidence that he meets all of the requirements for naturalization. One of those requirements is that he be a person of good moral character. And in order to establish that he's a person of good moral character, he must show that he hasn't been convicted of an aggravated felony. He argued that he wasn't convicted of an aggravated felony because there was a mismatch involving HCG and he didn't present any other argument on that issue. So he could not have met his burden of proof. And the last reason why the court need not consider other substances is because of the realistic probability rule, which comes from the Duenas-Alvarez case. Under that rule, unless the statute is facially overbroad, which it's not, Mr. Diaz must show a realistic probability that New York would apply its statute to conduct that is not covered by the CSA. He hasn't attempted to make any such showing. So for all of these reasons, the court need not consider other substances and should find that there is a categorical match and affirm the district court's judgment. Thank you, Mr. Kearse. Mr. Stolar, you've reserved some time. Yes, sir. May it please the court. Mr. Stolar, can I ask you one question out of the gate? If we determine that we're going to apply the 1996 version of the statute, do you lose? Yes. I think the answer is that ultimately that the case law in the Second Circuit and the argument that my colleague has presented makes it such that what we thought initially were to be something that was overbroad at the time turns out that we were wrong. And that's, I think, where the judge focused when it came to dismissing the case initially. And, you know, here, you know, I honestly don't think that the question of whether the statute is divisible or indivisible really matters. Because ultimately if we can agree, as the Second Circuit has said, that there is a mismatch, at least from 2015 afterwards, then the real issue before the court is whether or not we apply that mismatch at the time of the application for naturalization or we stick to the question at the time of conviction. And I acknowledge that the issue is not briefed before the court. It was something that wasn't discussed in the motion to dismiss. And it was something that I only got to through reading the government's brief and going from Sadler to Townsend eventually to Swinton. So, you know, I think at a minimum it may behoove everyone involved to try and perhaps send the case back down to the district court for it to provide some additional reasoning as to whether or not the application deals with the time of conviction or this kind of time of sentencing or time of naturalization argument that I presented before the court today. We don't have to send it back. We could do that exercise ourselves. Correct. Absolutely. And that was where I was going to go next, which is to the extent that the court does decide to take that issue up. Again, I know of no case out there that I have seen that discusses exactly this issue as to whether or not there's a difference between time of conviction for purposes of removal, but you can apply the time of application for naturalization for purposes of naturalization. But, you know, just like there is somewhat of a bifurcation and when it comes to these sentencing issues that, you know, for some things it depends on time of conviction and for others it depends on time of sentencing. I think those same reasons apply here. You know, that CSA is always, you know, moving around and things are added, things are taken away. The gentleman is asking for a benefit under the immigration law. He does have the burden of establishing that he's eligible for that. I think it's clear under the Second Circuit precedent that we've discussed today, or at least the Second Circuit reported decision we've discussed today, that the statute is overbroad. And it doesn't seem to be much, to make much sense to deny the application, deny the gentleman his eligibility to apply or availability of an application for naturalization when it's clear that the statute is now overbroad. I see my time is up. Thank you, Mr. Stover and Mr. Kearse. The court is in recess until 9 o'clock tomorrow morning. All rise. The court is adjourned.